

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2079 | DATE | 9/9/2004 |
| CASE TITLE | Dennis Moore vs. Cingular Wireless | | |

MOTION: [In the following box (a) indicate the party filing the motion. e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
 ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Ruling date of 9/30/04 is stricken. Defendant's motion to strike plaintiff Dennis Moore's affidavit (59-1) is granted. Plaintiff's motion to strike defendant's agent Cory Bolanowski's EEOC position statement and 12/18/03 declaration (62-1) is denied. There is no genuine issue of material fact on the Title VII claims plaintiff asserts against defendant. Defendant is entitled to judgment as matter of law. Accordingly, defendant's motion for summary judgment (32-1) is granted. Court enters judgment in favor of defendant Cingular Wireless and against plaintiff Dennis Moore. This is a final and appealable order.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 1 3 2004 | |
| | Notified counsel by telephone. | date docketed | 65 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CW courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DENNIS MOORE,

    Plaintiff,

v.

CINGULAR WIRELESS,

    Defendant.

No. 02 C 2079
Paul E. Plunkett, Senior Judge

DOCKETED SEP 13 2004

## MEMORANDUM OPINION AND ORDER

Dennis Moore ("Moore") has sued Cingular Wireless ("Cingular") for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Cingular has filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment. For the reasons set forth below, the motion is granted.

### Facts

Parties are expected to abide by the Local Rules ("LR") when submitting a motion for summary judgment and a response thereto. *See* LR 56.1. With its motion, Cingular submitted a memorandum of law in support and a statement of material facts with supporting materials as contemplated by LR 56.1(a)(3). In response, Moore submitted a memorandum of law and an affidavit accompanied by exhibits. He did not respond to Cingular's statement of material facts as required by LR 56.1(b)(3)(A) nor did he submit a statement of additional facts as allowed by LR 56.1(b)(3)(B). Cingular filed its reply and noted therein Moore's failure to comply with LR 56.1. Almost one month later, on August 9, 2004, Moore submitted "Plaintiff's Response to Defendant's Statement of Material Facts



As To Which It Contends There Is No Genuine Issue." We denied Moore leave to file this document, therefore, all material facts set forth in Cingular's LR 56.1(a)(3) statement are deemed admitted. *See* LR 56.1(b)(3)(B). *See also Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (upholding strict enforcement of LR 56.1 where non-movant failed to submit factual statement in form called for by rule, thus conceding the movant's version of the facts).

Cellular One, a subsidiary of SBC Communications, Inc. ("SBC"), hired Moore in August 1997 and promoted him to a non-exempt[1] position of Buyer I approximately two years later. (Def.'s LR 56.1(a) Stmt. ¶¶ 1, 3.) When Moore was promoted to the Buyer I position, Martha Morrison, Regional Purchasing Manager for the Great Lakes Region, became his supervisor. (*Id.* ¶ 2.) On October 8, 1999, SBC merged with Ameritech Corporation, Inc. ("Ameritech"). Ameritech Mobile was a subsidiary of Ameritech. (*Id.* ¶ 3.) At the time of the merger, SBC and Ameritech had disparate compensation structures. (*Id.* ¶ 4.) The compensation structure for the higher-paid Ameritech employees was held in place for two years following the merger. (*Id.*)

On October 2, 2000, SBC and Bell South Corporation entered into a joint venture. (*Id.* ¶ 5.) They pooled all of their wireless operations to form Cingular; both Cellular One and Ameritech Mobile were contributed to Cingular and the disparate compensation structures were left intact. (*Id.*) As a result of the joint venture, Moore became an employee of Cingular. (*Id.* ¶ 6.) Prior to becoming a Cingular employee, Moore was informed that Cellular One's pay scale was lower than that of Ameritech Mobile. (*Id.* ¶ 7.)

---

[1] A non-exempt position generally is one that is subject to minimum wage and overtime pay provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* At Cingular, this position was covered by a collective bargaining agreement.

As a member of a labor union, the Communications Workers of America, Moore's employment was governed not only by Cingular's policies, but also by the labor union's collective bargaining agreement with Cingular (the "Labor Agreement"). (*Id.* ¶ 8.) Moore served as a union steward from March 2001 to October 2001. (*Id.* ¶ 9.) The Labor Agreement recognizes only certain job titles and positions. (*Id.* ¶ 10.) Because Moore's Buyer I position was not recognized in the Labor Agreement, it was converted to the functionally equivalent title of Finance Representative II. (*Id.* ¶ 11.) Despite his membership in the union and the Labor Agreement's recognition of only certain job titles, in 2001, Moore considered himself to be a Buyer. (*Id.* ¶ 12.)

In June 2001, Cingular erroneously posted an opening for an exempt-level position.[2] (*Id.* ¶ 13.) The job posting identified the title of the position as Purchasing Agent, a title used loosely by some within Cingular prior to Cingular's rollout of its job mapping scheme. (*Id.* ¶ 14.) The position was officially a Buyer position. (*Id.* ¶ 15.) The mistitling of the open position had no material effect on the job qualifications, duties or other aspects of the advertised position. The Buyer position was in the "facilities" area of purchasing. (*Id.* ¶ 17.)

Cingular awarded Gale Schourek, one of Moore's co-workers, with the Buyer position in June 2001. She was given the position as a reward for her strong performance and increasing responsibility and demonstrated effort, and because her immediate experience was in facilities buying. (*Id.* ¶ 16.) Schourek had fifteen years of relevant retail experience; Moore had very little facilities purchasing experience. (*Id.* ¶¶ 18, 19.) According to the job posting, there is no "one year in current position" requirement for the position. (*Id.* ¶ 21.) Moore, however, believes this requirement exists, although he cannot produce any document in support. (*Id.* ¶¶ 20, 22.)

---

[2] An exempt-level position at Cingular is not covered by the Labor Agreement.

When it was announced that Schourek received the new title, Moore complained to the Human Resources Department, saying that he deserved the promotion. (*Id.* ¶ 23.) Cory Bolanowski, Senior Human Resources Manager, investigated. Bolanowski learned that the title of the advertised position should have been Buyer rather than Purchasing Agent, and that the new position Schourek received was intended to reward her for her hard work and acknowledge her increased duties over the preceding months. (*Id.*) Bolanowski then reviewed the positions held by others in the department and concluded that the work functions of the Finance Representative II (Moore's position) and Buyer positions were similar enough to become one exempt-level position. Bolanowski determined that Moore and his co-worker, Roger Reynolds, should be given the same title, Buyer, as well as the same percentage salary increase (10%) and authorization level ($25,000) as Schourek. (*Id.*) Schourek was promoted to Buyer on or about June 21, 2001, and Moore and Reynolds were promoted to Buyer effective July 8, 2001, approximately two weeks later. (*Id.* ¶¶ 25, 26.)

Even with the promotion, Moore remained upset that he did not receive the title of Purchasing Agent. (*Id.* ¶ 27.) However, no one at Cingular, not Schourek and not Reynolds, held the title of Purchasing Agent in the summer of 2001 because the title was not recognized by Cingular's job mapping scheme. (*Id.* ¶ 28.) Cingular has explained to Moore numerous times that he cannot have the title of Purchasing Agent because no such title is recognized. (*Id.* ¶ 30.) Moore acknowledges that the person Schourek replaced was never considered a Purchasing Agent. (*Id.* ¶ 29.) Moore, however, remains steadfast in his belief that he was entitled to be named a Purchasing Agent. (*Id.* ¶ 31.)

Within two months of their promotions, Schourek, Moore and Reynolds were informed that, as part of the completion of the merger process, the Hoffman Estates, Illinois purchasing department would be consolidated into the new Cingular headquarters in Atlanta. (*Id.* ¶ 33.) Cingular offered

Moore two options – he could accept a Buyer position in Atlanta, with paid relocation expenses, or he could accept a Regional Purchasing Coordinator position in Hoffman Estates. (*Id.* ¶ 34.) Moore rejected both of these options. (*Id.*) He considered them to be "lateral" moves. (*Id.* ¶ 35.) Schourek was also notified of the elimination of her Hoffman Estates Buyer position. (*Id.* ¶ 36.)

Moore filed a charge with the Equal Employment Opportunity Commission ("EEOC"), complaining that his supervisor, Morrison, had screamed at him, that he was paid less than Schourek, and that the Purchasing Agent position had been awarded to Schourek. (*Id.* ¶ 37.) Moore claims he was discriminated against on the basis of race. Both Morrison and Schourek are white and Moore is black. (*Id.* ¶¶ 38, 39.)

Moore admits that Morrison was combative and a difficult person to get along with. Moore believes a number of employees left the purchasing department because they wanted more respect and better treatment than what Morrison provided. (*Id.* ¶ 40.) These employees include Lisa Fletcher, Mike Jones, Kathy Carrillo, Diane Gorman and Laura Patrick, some of whom are white. (*Id.*) In addition, after Moore complained of Morrison's behavior in the summer of 2001 to Bolanowski, Morrison's conduct became acceptable to Moore. (*Id.* ¶ 41.)

One month later, in October 2001, Moore filed a second EEOC charge alleging retaliation. He claimed that: (1) his phone had been tampered with; (2) he received an email from the chief counsel of Labor and Human Resources at Cingular expressing concern with Moore's insinuation at a focus group meeting that a third-party diversity consultant (SCENDIS) retained by Cingular would attempt to sanitize its report[3]; and (3) Cingular refused to mediate his first EEOC charge. (*Id.* ¶ 42.)

---

[3] The SCENDIS report is the product of self-evaluative focus groups and was intended to guide Cingular in its diversity and affirmative action efforts. The report contains two parts: (1) confidential and anonymous comments made by employees representing various departments and locations within Cingular; and (2) a summary and analysis performed by the SCENDIS group. (*Id.* ¶ 43.)

In his complaint, Moore contends that the denial of the Purchasing Agent title was retaliation for his challenge of Schourek's promotion to Buyer. He also says that Cingular's consolidation of the purchasing department was retaliatory in that it was somehow intended to target him or was in response to his internal challenge of Schourek's promotion. (*Id.* ¶¶ 46, 47.) Moore believes that he was denied an opportunity for promotion that would have protected him from lay off, relocation and lateral transfer even though the position advertised provided no such protection. (*Id.* ¶ 48.) In fact, Schourek, like others in the Hoffman Estates purchasing department, was notified in August 2001 that her Buyer position would be eliminated as part of the impending layoffs. (*Id.* ¶ 49.)

When Moore started at Cellular One in August 1997, his hourly rate was $10.096, yielding an annual "salary" of approximately $21,000. (*Id.* ¶ 50.) When he ended his employment at Cingular, his annual salary was $33,305. Schourek started with Ameritech Mobile in November 1997 at an annual salary of approximately $33,000 and her salary at the time of separation was $46,750. Moore's salary increased by 58% and Schourek's salary increased by 41%. (*Id.* ¶ 51.) Moore's compensation was consistent with that of Reynolds, the other member of his work group who began his employment at Cellular One. (*Id.* ¶ 52.) Reynolds is white. (*Id.*)

Moore filed a complaint against Cingular, alleging racial discrimination and retaliation in violation of Title VII. Cingular has filed a motion for summary judgment.

### The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

## Discussion

There are two preliminary matters which we must first address: Cingular's motion to strike Moore's affidavit and Moore's motion to strike Bolanowski's EEOC position statement and her declaration. First, Cingular moves to strike Moore's affidavit entirely because he failed to comply with LR 56.1(b)(3) and his affidavit is a poor substitute for the response allowed by that rule as it consists of unsupported and conclusory opinion and contains allegations that are irrelevant to the claims before us. We grant Cingular's motion. The Local Rules require Moore to respond to each of Cingular's statements of material fact and indicate any disagreement with a specific citation to the record. *See* LR 56.1(b)(3)(A). Subsection (b)(3)(B) allows Moore to introduce additional facts, presented as short, numbered paragraphs with appropriate citations to supporting materials. *See* LR 56.1(b)(3)(B). Moore's affidavit submitted in response to Cingular's motion does not satisfy the requirements of either LR 56.1(b)(3)(A) or (B). *See Waldridge*, 24 F.3d at 922 (district court may strictly enforce LR 56.1 requirement that response be in particular form). Nowhere in it does he attempt to comply with LR 56.1(b)(3)(A) and respond directly to Cingular's LR 56.1(a) statement of facts. The affidavit may be Moore's attempt to submit his own statement of material facts as contemplated by LR 56.1(b)(3)(B), but he fails to properly support his "facts" or present any facts that are material to the

issues in this case. For example, his statements in paragraphs 2, 7, 9, 11, 12 and 13 are conclusory and without citation to any supporting documentation. In paragraphs 3 and 4, Moore focuses on the difference between a Buyer position and that of a Purchasing Agent, but he offers no foundation for the supporting documents he submits, and he fails to respond directly to Cingular's contention that its job mapping scheme does not recognize a Purchasing Agent position. Moore provides no factual support for his contentions in paragraphs 5 and 6, and he fails to recognize that the "time-in-title" requirement is inapplicable to the advertised exempt-level position. Moore asserts in paragraph 8 that he is more experienced and qualified than Schourek, but he provides no factual support. He speaks only of his own qualifications and does not address those of Schourek. His personal opinion as to who is the more experienced and qualified employee for a particular promotion is not sufficient to create an issue of material fact. *See Meeks v. Shuman*, No. 95-C3010, 1997 WL 12790, at *4 (N.D. Ill. Jan. 10, 1997) (court will not consider personal opinion in affidavit on matter to which affiant not competent to testify). Paragraph 10 is conclusory and Moore offers no evidentiary support for his claims of past discrimination.

We deny Moore's motion to strike Bolanowski's EEOC position statement and December 2003 declaration. Moore believes they should be stricken because Bolanowski has no experience or knowledge of the purchasing field and is therefore unqualified to make statements concerning the purchasing field. We disagree. Bolanowski is the Senior Human Resources Manager for Cingular. She performed human resources functions for the Hoffman Estates purchasing department, where Moore was an exempt-level Buyer, before the department was relocated to Atlanta in October 2001. (Bolanowski Dec. ¶ 1.) She also personally investigated Moore's complaint of Schourek's promotion.

She has personal knowledge of the matters that are the subject of her declaration and the EEOC position statement and we will not strike these documents from the record.

*Employment Discrimination*

Moore alleges that Morrison's screaming at him and the denial of the Purchasing Agent position occurred because of his race in violation of Title VII. Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C.A. § 2000e-2 (1994). To defeat Cingular's motion with respect to his discrimination claim related to Morrison's treatment of him, Moore must make out a *prima facie* case of discriminatory treatment. He must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly situated persons not in the protected class were treated more favorably. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 742-43 (7th Cir. 1999). If he succeeds, the burden of production shifts to Cingular to offer a legitimate, non-discriminatory reason for the adverse action. If Cingular carries its burden, the burden then shifts back to Moore to show the proffered reasons for the adverse action are merely pretext. *See Von Zuckerstein v. Argonne Nat'l Lab.*, 984 F.2d 1467, 1472 (7th Cir. 1993). The ultimate burden to prove discrimination remains at all times with Moore. *See Sattar v. Motorola*, 138 F.3d 1164, 1169 (7th Cir. 1998).

Moore cannot satisfy the *prima facie* case requirements because he cannot show that he suffered an adverse employment action. He states in his EEOC charge that Morrison "constantly screams" at him and berates him in front of co-workers. (Moore Dep. Ex. 1.) Even if this were true, it would not be considered an adverse employment action for purposes of Title VII. An adverse

employment action is broadly defined, but it must "materially alter the terms and conditions of employment." *Stutler v. Illinois Dep't of Corrs.*, 263 F.3d 698, 703 (7th Cir. 2001). Moore has not demonstrated how Morrison's behavior toward him altered the terms and conditions of employment. Our court of appeals has found that a supervisor's failure to speak or greet an employee was not an adverse employment action nor was a supervisor's rummaging through an employee's desk and waste basket and listening to the employee's telephone calls. *See id.* (discussing cases of *Bell v. Env'tl Prot. Agency*, 232 F.3d 546, 555 (7th Cir. 2000) and *Hill v. American Gen. Fin., Inc.*, 218 F.3d 639, 645 (7th Cir. 2000)). "Not everything that makes an employee unhappy will suffice to meet the adverse action requirement." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002) (internal quotation and citation omitted). In addition, Moore has not shown how he was treated less favorably than others outside of his protected class. Many employees, some white, left Morrison's department because they wanted respect and better treatment. (Def.'s LR 56.1(a) Stmt. ¶ 40.)

To demonstrate a *prima facie* case for his failure to promote claim, Moore must show that: (1) he is a member of a protected group; (2) he applied for and was qualified for the position; (3) he was rejected for the position; and (4) the one who was promoted had similar or lesser qualifications for the position. *Pafford v. Herman*, 148 F.3d 658, 669 (7th Cir. 1998). Moore cannot satisfy these elements.[4]

The job description, which listed the job title erroneously as Purchasing Agent, describes the responsibilities of the position and the preferred qualifications. Moore has not shown that he met the preferred qualifications. Nor has Moore demonstrated that Schourek has similar or lesser qualifications than he to perform the job duties. The facts show that Schourek was more qualified --

---

[4] Moore's ability to demonstrate a *prima facie* case is hindered by his failure to comply with LR 56.1 and present material facts as that rule contemplates.

she had fifteen years of relevant experience, whereas Moore's relevant experience was limited. (Def.'s LR 56.1(a) Stmts. ¶¶ 19, 20.) In addition, Schourek had a record of strong performance and accepting greater responsibility. (*Id.* ¶ 16.) Moore has not provided any evidence of his past performance. Moore's own belief that he was better qualified and more deserving of a promotion is not sufficient to support his failure to promote claim. *See Ost v. W. Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996).

Moore devotes much effort to the fact that the advertised Buyer position had a one-year time-in-position requirement and that he, and not Schourek, could meet that requirement. However, the facts show that while a time-in-position requirement may be relevant for a promotion to certain non-exempt level positions, this particular position was exempt; no time-in-position requirement existed.

We now address Moore's claim that he was discriminated against because, even when he was promoted to Buyer approximately two weeks after Schourek, Schourek was paid more. The fact that Schourek received a higher salary as Buyer than Moore is not, by itself, discriminatory. *See Cullen v. Indiana Univ. Bd. of Trustees*, 338 F.3d 693, 703-04 (7th Cir. 2003) (market forces, educational credentials and other factors may be legitimate reasons to justify pay disparity). To prove that the salary disparity is discriminatory, Moore must show that he and Schourek are similarly situated, which he cannot do. *See id.* at 704 (female plaintiff claiming gender discrimination based on pay disparity must satisfy *prima facie* case and show employer treated similarly situated male more favorably). As discussed above, Moore is unable to show that he and Schourek are "directly comparable in all material respects." *Peele v. Country Mutual Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (citing *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Schourek's higher salary is a product of the merger of companies with two different compensation structures. As an employee of

Ameritech Mobile, Schourek came to Cingular with a higher salary, one that would be held in place even after the merger was complete. (Def.'s LR 56.1(a) Stmt. ¶¶ 4, 51.) In addition, Schourek has significantly more experience than Moore and demonstrated strong past performance. Moore has not shown that he and Schourek are similarly situated "with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-18 (7th Cir. 2000). The burden to prove a Title VII claim is Moore's. *See Sattar*, 138 F.3d at 1169.

Even if Moore did establish a *prima facie* case of discrimination from Schourek's promotion or higher salary, he cannot demonstrate pretext. To demonstrate pretext, Moore must show that Cingular's articulated reason for Schourek's promotion and greater salary is "unworthy of credence," *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888 (7th Cir. 2001), or "a lie, . . . a phony reason." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995). "[P]retext means deceit used to cover one's tracks." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002) (citing *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 730 (7th Cir. 2001)). As long as Cingular believes that Schourek was promoted as a reward for her extra efforts and because of her relevant experience, and received a higher salary because of her prior experience and employment with Ameritech Mobile, Moore cannot meet his burden. *See Gordon*, 246 F.3d at 889. Nothing provided by Moore calls into question Cingular's belief in these articulated reasons. Moore has not shown that there exists an issue of triable fact as to whether Schourek's earlier promotion and higher salary were motivated by race or reasons other than what Cingular has stated.

*Retaliation*

To establish a *prima facie* claim of retaliation, Moore must show that he engaged in protected activity, he suffered an adverse employment action and there is a causal link between the two. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998). Moore cannot satisfy these elements.

The claims of retaliation Moore made in his October 2001 EEOC charge – tampering with his phone, the email from chief counsel of Labor and Human Resources and Cingular's refusal to mediate his first EEOC charge – do not rise to the level of an adverse employment action. They cannot fairly be considered "significant changes in employment status" or "materially" adverse. *Cf. Ribando v. United Airlines, Inc.*, 200 F.3d 507, 510-11 (7th Cir. 1999) (letter of concern in personnel file not adverse employment action).

Moore has not demonstrated how the denial of the Purchasing Agent title was an adverse employment action. No one at Cingular had that title and in fact, it was not recognized under Cingular's job mapping scheme. Cingular has admitted that using the job title of Purchasing Agent in its advertisement was a mistake and Moore has provided no evidence that calls into question Cingular's explanation. Even Schourek, who was promoted following the posting of the position, was promoted to a Buyer position and not to a Purchasing Agent position.

We next address Moore's issues with Cingular's decision to consolidate the Hoffman Estates purchasing department into Cingular's headquarters in Atlanta. Moore's accusation that this action, resulting in the elimination of his Hoffman Estates position, was retaliatory is without merit. First, it is not clear that Moore suffered an adverse employment action. As a result of the consolidation, Moore was offered a choice between two positions – a Buyer position in Atlanta and a Regional Purchasing

Coordinator position in Hoffman Estates. Moore considered both positions to be lateral moves. A lateral transfer is not necessarily an adverse employment action. *See Stutler*, 263 F.3d at 702. Moore has not offered any evidence to explain how his job responsibilities would have been changed had he taken either position or that either position would have resulted in a reduction in benefits. *See Hempstead v. Rockford Hous. Auth.*, No. 99-C50421, 2001 WL 1380514 (N.D. Ill. Nov. 6, 2001) (discussing whether job transfer constitutes adverse employment action). Next, Moore has not shown that, had he received the title of Purchasing Agent, he would have been immune from the changes at the company. Finally, Moore cannot show that he was treated less favorably than others who were similarly situated and not of his race. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000) (in a reduction-in-force ("RIF") case, plaintiff must show similarly situated employees who were not members of plaintiff's protected class were treated more favorably). All of the employees in Moore's department were notified of the consolidation. Schourek, the white woman who received the promotion erroneously advertised as Purchasing Agent, and Reynolds, a white man who was promoted to Buyer at the same time as Moore, were notified along with Moore that their positions would be moved to Atlanta.

In addition, Moore has not established causation. Moore must demonstrate that Cingular would not have taken any of the alleged adverse actions had Moore not complained about Schourek's promotion. *See Wells*, 289 F.3d at 1008 (to establish causal link, plaintiff must show employer would not have taken adverse action but for plaintiff's protected activity). The timing of the events by itself does not demonstrate the requisite causal connection. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) (suspicious timing alone in not enough;"the mere fact that one event preceded another does nothing to prove that the first event caused the second"). Moore has not supported the

-14-

causation requirement of his retaliation claim with evidence of other circumstances which "reasonably suggest that the . . . events are somehow related." *Id.*

Even if Moore could establish a *prima facie* case of retaliation, he has not shown that Cingular's articulated reasons for its actions are mere pretext. *See Collins v. State of Illinois*, 830 F.2d 692, 702 (7th Cir. 1987) (relative burdens for proving retaliation claim parallels those established for proving race discrimination claim). If we look only at Moore's claim that he was denied the position of Purchasing Agent in retaliation for his challenge to Schourek's promotion, we find Moore has not sustained his burden. He has not offered any evidence to show that Cingular's reasons for denying him the Purchasing Agent position – that it is not recognized under the job mapping scheme and does not exist – has no basis in fact or that the reason was an insufficient justification for Cingular's actions. *See Wells*, 289 F.3d at 1006. There is nothing to suggest that Cingular denied him his desired title because it was retaliating against him for questioning Schourek's promotion.

Viewing this case as a reduction-in-force ("RIF") case, it is appropriate to collapse the usual inquiry and focus on the showing of pretext. *See Samuelson v. Durkee/French/Airwick*, 760 F. Supp. 729, 736 (N.D. Ill. 1991), *aff'd*, 976 F.2d 1111 (7th Cir. 1992). Here, Cingular has provided a non-discriminatory reason for the elimination of Moore's Hoffman Estates position -- economic reasons relating to the merger. *See Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1114 (7th Cir. 1992) (company merger sufficient economic change to necessitate reduction in force). Moore has failed to show that these reasons are false or that the consolidation was carried out in a discriminatory manner, or was, in fact, motivated by race and directed against Moore because Moore challenged the circumstances of Schourek's promotion. In sum, Moore's retaliation claims against Cingular fail.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on the Title VII claims Moore asserts against Cingular. Cingular is entitled to judgment as matter of law. Accordingly, its motion for summary judgment is granted. This is a final and appealable order.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: SEP - 9 2004

# United States District Court
## Northern District of Illinois
### Eastern Division

Dennis Moore

v.

Cingular Wireless

**JUDGMENT IN A CIVIL CASE**

Case Number: 02 C 2079

- ☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- ■ Decision by Court. This action came to hearing before the Court. The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that defendant's motion to strike plaintiff Dennis Moore's affidavit (59-1) is granted. Plaintiff's motion to strike defendant's agent Cory Bolanowski's EEOC position statement and 12/18/03 declaration (62-1) is denied. There is no genuine issue of material fact on the Title VII claims plaintiff asserts against defendant. Defendant is entitled to judgment as matter of law. Accordingly, defendant's motion for summary judgment (32-1) is granted. Court enters judgment in favor of defendant Cingular Wireless and against plaintiff Dennis Moore. This is a final and appealable order

Michael W. Dobbins, Clerk of Court

Date: 9/9/2004

Carol Wing, Deputy Clerk